180968

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD TAYLOR,

          Plaintiff,

   v.

PROFESSIONAL          SECURITY
CONSULTANTS, INC.

         Defendant.

No. 1:19-cv-05918

Hon. Virginia M. Kendall

## DEFENDANT PROFESSIONAL SECURITY CONSULTANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

NOW COMES defendant, Professional Security Consultants, Inc. ("PSC") by and through its attorney, in this regard, Thomas W. Cushing and Donohue, Brown, Mathewson & Smyth, LLC., and submits its memorandum of law in support of its motion for summary judgment.

## I. INTRODUCTION

Plaintiff Richard Taylor was first hired by defendant Professional Security Consultants, Inc., ("PSC") in May 2015 at the age of 59 as a security guard. Within weeks of being hired, Taylor began receiving Notices for Improvement. He began working for PSC at Hawthorn Mall but was transferred because he could no longer work there once the general manager of the mall demanded that Taylor be removed due to poor performance. PSC did not fire Taylor but rather, transferred him to work for PSC at Old Orchard Mall beginning in 2016. Taylor's poor performance continued at Old Orchard Mall with numerous instances of acting in an unprofessional and insubordinate manner as documented by PSC records referred to in

1

defendants Rule 56.1(a)(2) Statement of Material Facts. Once again, the mall management insisted on Taylor's removal from its premises due to poor performance. Taylor was suspended pending an investigation into his work performance and his behavior. Following that investigation, Taylor's employment with PSC was terminated as of March 26, 2018.

On June 4, 2018, Taylor filed a five-count claim against PSC with the Illinois Department of Human Rights and EEOC alleging he was discriminated against by PSC during the 5 months from November 2017 through March 29, 2018. After the parties submitted hundreds of pages of documents and Taylor and four current or former PSC employees were interviewed by the hearing officer, the hearing officer issued a 20-page report finding a lack of substantial evidence as to Taylor's five age discrimination claims. The hearing officer found that Taylor could not name anyone under 40 or any significantly younger security officers at PSC who were treated more favorably than Taylor and the hearing officer also found no instance of PSC's actions as to Taylor being taken due to Taylor's age. Thereafter, Taylor filed this lawsuit.

Defendant PSC is entitled to summary judgment in this case because Taylor's age discrimination claims lack substance and there is no evidence that defendant's issuance of Notices for Improvement, the suspension of Taylor pending investigation nor the termination of his employment with PSC were taken due to Taylor's age. Instead, the record is clear that Taylor was not performing at a level that met his employer's expectations and there is no evidence that another similarly situated individual who was not in the protected class was treated more favorably than Taylor. The actions taken by PSC were due to an employee's poor job performance. Summary judgment should be granted to PSC in this case.

## II.    SUMMARY OF FACTS

Plaintiff's first counsel in this case was Maudia Washington and her motion to withdraw
was granted by this Court.  Defendant's Rule 56.1(a)(2) Statement of Material Facts ("Def. 56.1
St.") ¶¶ 1, 4).  Ms. Washington also appeared and represented plaintiff through settlement in a
2016 race discrimination lawsuit against PSC and Hawthorne Mall before Judge Blakey of the
Northern District of Illinois under docket number 16-cv-05210.  *Id*.  ¶¶ 8-9.  The prior suit was
settled before Magistrate Judge Gilbert and the parties entered into a settlement agreement which
Mr. Taylor admits he signed and that he received the settlement proceeds described in the
settlement agreement.  *Id*.  ¶¶ 10-11.  Pursuant to the settlement agreement, Taylor released all
claims against PSC except for his Charge 2018CA2594 before the Illinois Department of Human
Right in which he alleged age discrimination and a charge he had filed before the National Labor
Relations Board.  *Id*.  ¶ 12.  Pursuant to the terms of the settlement agreement, Taylor could
proceed with his claims asserted in Charge 2018CA2594, but only "as currently pled" and Taylor
agreed to never apply for re-employment with PSC.  *Id*.  ¶¶ 13-14.

Plaintiff's claims in the current federal case arise from five counts he claimed in an Age
Discrimination charge he filed on June 4, 2018, with the Illinois Department of Human Rights
and EEOC under Charge Number 2018CA2594.  *Id*.  ¶ 6.  On February 15, 2019, the
Investigator for the Illinois Department of Human Rights issued his Investigation Report with a
finding of "Lack of substantial evidence" for each of the five counts brought by plaintiff in his
Charge No. 2018CA2594.  *Id*.  ¶ 7.  Counsel for Taylor stipulated that the Exhibit attached to
Def. 56.1 St. ¶ 7 is the State of Illinois Department of Human Rights Investigation Report.  *Id*.
The IDHR report consistently found no substantiation to Mr. Taylor's claims of age

discrimination nor that any of the warnings given to Taylor subjected him to any materially adverse employment action or caused him any loss in pay or benefits. *Id*.

In his age discrimination claim before the Illinois Department of Human Rights, Taylor claimed he was never allowed to drive a vehicle while working at Old Orchard Mall. *See* Exhibits 1 and 2. As described above, plaintiff's claim was denied as lacking substantial evidence. Notably, in his deposition testimony in this case, Taylor admitted he was allowed to drive a vehicle while working at Old Orchard Mall. Def. 56.1 St. ¶ 56.

Taylor was hired by PSC as a security guard on May 29, 2015, at the age of 59. *Id*. ¶¶ 16-17. Plaintiff began working for PSC at Hawthorn Mall in 2015 and was later transferred to Old Orchard Mall. *Id*. ¶ 18. When plaintiff started working at Old Orchard Mall, there were no PSC security guards older than him. Def. 56.1 St. ¶ 19. Rishi Mishra was his direct supervisor at Old Orchard Mall and Taylor would discuss his job duties with Mishra and Mishra would discuss Taylor's job performance with Taylor. *Id*. ¶ 20. When plaintiff's employment at PSC was terminated, plaintiff was working at Old Orchard Mall. *Id*. ¶ 21. Mishra told him that his employment with PSC was being terminated. *Id*. ¶ 22.

Defendant has provided a declaration by Rishi Mishra Declaration pursuant to 28 U.S.C. § 1746 in which Mishra declares, among other things, that as a result of his being the Security Director for PSC at Old Orchard Mall where Richard Taylor worked, Mishra has personal knowledge that the PSC records contained in Group Exhibit 7 to this Statement of Material Facts and referred to in Def. 56.1 St. ¶¶ 24-55, were made at or near the time of the events described by a person with personal knowledge of the events described; the records were kept in the ordinary course of business by PSC; and the making of such records was a regular practice at PSC. Def. 56.1 St. ¶ 23.

4

Taylor's work performance while working for PSC at Hawthorn Mall was the subject of numerous notices for improvement and reprimands due to unprofessional conduct and poor performance, including the following: taking too long of a break, *Id.* ¶ 24; failure to report inspections, extended breaks and sleeping on duty, *Id.* ¶ 25; failure to keep radio on and respond to dispatch and improper radio traffic to dispatch, *Id.* ¶ 26; reporting to work late, *Id.* ¶ 27; failure to respond to radio call, *Id.* ¶ 28; failing to complete appropriate number of rounds, *Id.* ¶ 29; being insubordinate, and refused to sign write up, *Id.* ¶ 30; failing to stay on "Detex tours" and refusing to sign write up, *Id.* ¶ 31; disregarded Officer Safety Procedures, *Id.* ¶ 32. The General Manager of Hawthorn Mall, Mr. Jeff Rutzen, reported that when a fire alarm went off in the mall on December 13, 2015, Taylor was "very unprofessional" and Rutzen received numerous complaints about Taylor from tenant/retailers and shoppers. *Id.* ¶ 33-34. Rutzen requested that PSC remove Taylor from duty at Hawthorn Mall. *Id.* ¶ 34. Taylor recalls the fire alarm incident and admits he was telling stores and patrons to leave. *Id.* ¶ 39. On December 24, 2015, Taylor was informed by PSC that Taylor could no longer work at Hawthorn Mall because of the client's request and Taylor was transferred to Old Orchard Mall. *Id.* ¶ 40.

Within his first month at Old Orchard, Taylor received a notice for improvement for failing to return loaned equipment to dispatch. Mr. Taylor refused to sign that notice for improvement. *Id.* ¶ 41. Taylor received other notices for improvement while working at Old Orchard Mall and his poor work performance and poor attitude were noted in multiple entries in PSC employment records, including: a notice for improvement on March 22, 2016, for reporting to his shift late due to not being in full uniform, and for refusing a uniform inspection, *Id.* ¶ 42; arrived two hours late to his shift on October 9, 2016, *Id.* ¶ 43; a notice for improvement on November 8, 2016, for unprofessional conduct and failing to follow procedure, *Id.* ¶ 44; on

November 13, 2016, Mr. Mishra issued a write up to Taylor because Taylor continually disrespected supervisors and staff, but Taylor refused to sign the write up  and refused to discuss it with his supervisor, *Id.* ¶ 45;  General Manager of Old Orchard, Serge Khalimsky, had "run ins" with Taylor and was interested in removing Taylor from Old Orchard.  *Id*; notice for improvement on March 25, 2017, for unprofessional conduct and Taylor refused to sign his notice for improvement, *Id.* ¶ 47; and on April 22, 2017, Mr. Taylor refused to call out his store checks and failed to scan those checks into the security system and he was warned about unprofessional conduct over the radio, *Id.* ¶ 48.

On or about June 26, 2017, the General Manager of Old Orchard Mall, Serge Khalimsky, asked Mr. Mishra to remove Mr. Taylor from the Old Orchard site due to Taylor's performance over the previous 18 months, including recent arguments during a training session involving the mall's active shooter guidelines.  *Id.* ¶ 49.  On January 26, 2018, Mr. Taylor refused to take his drug test.  *Id.* ¶ 50.  Mr. Taylor received a notice for improvement on March 17, 2018, for making unprofessional and personal remarks over the two-way radio system. Mr. Taylor again refused to sign his notice for improvement.  *Id.* ¶ 51.  On March 23, 2018, Mr. Taylor acted in an insubordinate manner and refused to sign two memos regarding his performance.  *Id.* ¶ 52. Rishi Mishra requested that Mr. Taylor speak with him regarding his failure to sign the memos, and Mr. Taylor refused.  *Id.*  Mr. Mishra advised Mr. Taylor "If you don't want to sign the memo, you can go home."  *Id.*  Mr. Taylor responded, "I'll sign them later on tomorrow, not now since I'm leaving."  *Id.*  Mr. Taylor was advised that he had 4-5 minutes remaining in his shift and he still had time to sign the memos.  *Id.*  Mr. Taylor was non-responsive and refused to speak with Mr. Mishra for the remaining 4 minutes of his shift.  *Id.*

Taylor received a written notice for improvement arising out of an incident on March 26, 2018.  *Id.* ¶ 53.  Assistant Security Director, Brandon Ng, advised Mr. Taylor to conduct Case Mobile scan point tours and broadcast daily checks via two-way radio.  *Id.*  Mr. Taylor walked away from Mr. Ng, stating "you have to pay me extra for both."  *Id.*  Mr. Taylor proceeded to walk to the elevator and attempted to close the door on Mr. Ng.  As the doors closed Mr. Taylor stated, "Go ahead have Rishi write me up."  *Id.*  Security dispatch, Mr. Ng, and Supervisor Benjamin Kornstein made several attempts to contact Mr. Taylor over the radio and through his personal cell phone. *Id.*  Mr. Taylor did not answer those calls and returned to the office 10 minutes later.  *Id.*  Mr. Taylor refused to sign his written notice for improvement.  *Id.*  As Mr. Taylor's notice for improvement was being prepared, he appeared to place a telephone call to his attorney stating, "I have another one for you."  *Id.*  Serge Khalimsky, General Manager of Westfield Old Orchard, requested that Richard Taylor be removed from duty immediately.  *Id.* ¶ 54.  Mr. Khalimsky noted that he made this request three months earlier.  *Id.* ¶ 54.  Taylor's employment at PSC was terminated as of March 26, 2018.  *Id.* ¶ 55.  His employment with PSC was terminated due to poor job performance.  *Id.*

Despite the numerous notices of improvement noted in the above statement of facts, Taylor testified in his deposition that does not recall receiving any notices for improvement from his supervisors before the termination of his employment with PSC.  Def. 56.1 St. ¶ 57.

## III.    JUDICIAL NOTICE OF DOCUMENTS FROM OTHER PROCEEDINGS

As part of its motion for summary judgment, defendant PSC has submitted and refers to documents from plaintiff's previous lawsuit in this federal courthouse under docket number 16-cv-05210, including the settlement release from that case that plaintiff admits he signed and further admits that he received the settlement proceeds described.  PSC.  Def. 56.1 St. ¶¶ 8-15.

Defendant has also submitted and refers to plaintiff's claim before the Illinois Department of Human Rights and the Hearing Officer's Report. Plaintiff attached the claim to his complaint in this case and his current counsel has stipulated that Exhibit 2 is the Report by the Illinois Department of Human Rights regarding plaintiff's claim No. 2018CA2594. Def. 56.1 St. ¶¶ 6-7.

Pursuant to Federal Rule of Evidence 201(b), a court may take judicial notice of adjudicative facts that are both "not subject to reasonable dispute and are either (1) "generally known within the territorial jurisdiction of the trial court" or (2) "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Court records are appropriate subjects for judicial notice because they are sources "whose accuracy cannot reasonably be questioned." *General Elec. Capital Corp. v Lease Resolution Corp*., 128 F. 3d 1074, 1081 (7th Cir. 1997). Therefore, it is appropriate, and this defendant asks this Court to take judicial notice of the documents provided by this defendant from the federal case 16-cv-05210 and plaintiff's claim No. 2018CA2594.

## IV.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed R. Civ. P. 56(c). In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.,* 275 F. 3d 654, 658, (7th Cir. 2001). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago Sch.*

*Reform Bd. Of Trustees,* 233 F. 3d 24, 529 (7th Cir. 2000). When a proposed statement of fact is supported by the record and not adequately rebutted by the opposing party, the Court will accept that statement as true for the purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir. 2001). As the party opposing the motion for summary judgment, Taylor cannot rely upon mere conclusions and allegations to create factual issues. *Bladerston v. Fairbanks Morse Engine Div. Of Coltec Ind.,* 328 F.3d 309 (7th Cir. 2003). Defendant submits that plaintiff cannot provide a factual basis to refute Defendant's Rule 56.1(a)(2) Statement of Material Facts and that those facts and the law support defendant's motion for summary judgment. In this case, summary judgment is appropriate because there is no genuine issue as to any material fact that the termination of plaintiff's employment with PSC was the direct result of his poor performance as a security guard. Defendant did not fire Taylor after the manager of Hawthorn Mall demanded Taylor's removal for poor performance but rather, defendant PSC transferred Taylor to Old Orchard Mall and gave him another chance. However, after the manager of Old Orchard Mall demanded Taylor's removal and after numerous notices of improvement and instances of insubordination and unprofessional conduct, Taylor was fired by PSC. There is no evidence in the record indicating any discriminatory intent by the defendant.

## V.    DEFENDANT DID NOT VIOLATE THE ADEA AND IS ENTITLED TO SUMMARY JUDGEMT

Plaintiff brings this lawsuit pursuant to The Age Discrimination in Employment Act, 29 U.S.C. Section 621, et seq., ("ADEA"). To establish an age discrimination, claim under the ADEA, a plaintiff must show that he would not have been terminated "but for" his employer's intentional age discrimination. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061-62 (7th Cir.

9

2003).   A plaintiff such as Taylor may proceed under either the direct or indirect method of proving that PSC took an adverse employment action against him because of his age.   Under the direct method, Taylor must show, using either direct or circumstantial evidence, that the motivation behind his termination was discriminatory. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 610 (7th Cir. 2006). However, the direct method of proving discrimination "essentially requires an admission by the decision-maker that his actions were based on the prohibited animus," which makes this option not available to many aggrieved employees. *Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003).   So, it is with Mr. Taylor.   There is no direct evidence in this case that supports the direct method.   Indeed, plaintiff did not allege in this lawsuit that anyone made statements regarding plaintiff's age.

Where circumstantial evidence of discriminatory intent is relied upon, generally the indirect burden-shifting method as set forth in *McDonnell Douglas Crop. v. Green,* 411 U.S. 792 (1973) is applied.   Under the burden shifting approach, plaintiff must show (1) he was a member of a protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not in the protected class were treated more favorably. *See Burks v. Wisconsin Dept. of Transp.* 464 F. 3d 744, 750-51 (7th Cir. 2006) (*citing McDonnell Douglass*).   The burden then shifts to the employer to produce a legitimate, nondiscriminatory reason for the adverse employment decision. *Cerutti*, 349 F.3d 1055 (7th Cir. 2003). If the employer makes a prima facie showing of a legitimate non-discriminatory reason, the presumption of discrimination is rebutted. *See Loyd v. Phillips Bros. Inc.,* 25 F.3d 518, 522 (7th Cir. 1994). If using the burden shifting approach, it is impermissible for a plaintiff to call into question the veracity of the employer's motives unless he demonstrates that he was first meeting the employer's legitimate

10

expectations. *Ceruitt. v. BASF Corporation,* 249 F.3d 1055 (7th Cir. 2003). It has been well-established in employment discrimination cases that the court "does not sit as a super-personnel department that reexamines an entity's business decisions." *Dale v. Chicago Tribune Co.* 797 F.2d 458, 464 (7th Cir. 1986). The question, therefore, is whether the legitimate reason provided by the employer is an honest reason. *Hudson v. Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004). The question is not whether the employer exercises prudent business judgment, but whether there were legitimate reasons for the discharge. *Wolf v. Buss Am. Inc.*, 77 F.3d 914, 920 (7th Cir. 1996). In doing so, the issue is whether the plaintiff was performing well at the time of her termination. *Peele v. Country Mutual Insurance Co.,* 288 F.3d 319, 329 (7th Cir. 2002) The court should be mindful, however, that "the ultimate burden of persuading the trier of fact that defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Chairamonte,* 129 F.3d. at 398, citing *Saint Mary's Honor Center. v. Hick,* 509 U.S. 502, 507 (1993).

In this case, no evidence exists for the plaintiff to prove his claim through the burden-shifting method, because the plaintiff will never be able to show that he was performing his job satisfactorily. In addition to all the notices for improvement issued to Taylor and his numerous acts of insubordinate conduct of refusing to sign write-ups issued to him noted in defendant's Rule 56.1 Statement, two managers from two different malls demanded that Taylor not work on their premises any longer due to performance issues and attitude issues. PSC had a legitimate non-discriminatory reason for terminating Taylor's employment.

WHEREFORE, defendant Professional Security Consultants, Inc. ("PSC"), respectfully requests that this Court enter summary judgment in its favor and against plaintiff.

DATE:  July 28, 2021

DONOHUE BROWN MATHEWSON & SMYTH LLC


By:   _/s/ Thomas W. Cushing_
Thomas W. Cushing, Counsel for PSC


DONOHUE BROWN MATHEWSON & SMYTH LLC
Thomas W. Cushing
140 South Dearborn Street, Suite 800
Chicago, IL  60603
(312) 422-0900
service@dbmslaw.com
cushing@dbmslaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 28, 2021, I electronically filed **DEFENDANT PROFESSIONAL SECURITY CONSULTANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT** with the Clerk of the United States District Court for the Northern District of Illinois by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

/s/Thomas W. Cushing

_____

**SERVICE LIST - 1:19-cv-05918**
Christina Abraham
Abraham Law & Consulting, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60601
312-588-7150
christina.w.abraham@gmail.com

Janaan Hashim
Amal Law Group, LLC
161 N. Clark Street, Suite 1600
Chicago, IL 60602
312-882-4122
jhashim@amallaw.com