**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| FIRST LAST NAME, | ) | |
| Plaintiff, | ) | Case No. 19-cv-05918 |
| | ) | |
| v. | ) | Hon. Virginia M. Kendall |
| | ) | |
| INSERT NAME, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS**

Plaintiff RICHARD TAYLOR, by and through undersigned Counsel, submits in accordance with

Local Rule 56.1 of the United States District Court for the Northern District of Illinois, the

following response to the movant's statement of undisputed material facts:

**Current Federal Case**

1. Plaintiff filed his five-count complaint at law through his attorney Maudia Washington on

   September 4, 2019, alleging violations of the Age Discrimination in Employment Act

   ("ADEA"), 29 U.S.C. Sec. 621-634. Docket No. 1.

RESPONSE: Admit.  Plaintiff clarifies that the complaint was filed through his *former* attorney,

Maudia Washington.

2. Defendant PSC filed a motion to dismiss Counts III ("Retaliation") and Count IV "ADEA").

   Docket No. 13.

RESPONSE: Admit.

3. Defendant PSC filed an Amended Answer to the remaining counts of plaintiff's complaint

denying all material allegations of wrongdoing and raising various affirmative defenses.
Docket No. 15.

RESPONSE: Admit.

4. This Court granted Maudia Washington's motion to withdraw as plaintiff's attorney in this
case. Docket No. 26. This Court granted defendant's motion to dismiss. Docket No. 28.

RESPONSE: Admit. Plaintiff adds that this motion was granted on December 20, 2019. Doc.
No. 26.

5. This Court granted defendant's motion to dismiss. Docket No. 28.

RESPONSE: Admit. Plaintiff clarifies that the motion to dismiss was for Counts III and IV.
Doc. No. 28.

**Illinois Department of Human Rights**

6. Plaintiff's claims in the current federal case arise from five counts he claimed in an Age
Discrimination charge he filed on June 4, 2018, with the Illinois Department of Human
Rights and EEOC under Charge Number 2018CA2594. *See* Exhibit 1. (Plaintiff attached a
partial Charge with his complaint in this case, Docket No. 1-1, Exhibit 1 is a complete copy
of the Charge).

RESPONSE: Admit.

7. On February 15, 2019, the Investigator for the Illinois Department of Human Rights issued
his Investigation Report with a finding of "Lack of substantial evidence" for each of the five

counts brought by plaintiff in his Charge No. 2018CA2594.  *See* Exhibit 2. Counsel for

Taylor stipulated that Exhibit 2 herein is the State of Illinois Department of Human Rights

Investigation Report (marked at Taylor's deposition as Exhibit 4). *See* Exhibit 6, Richard

Taylor's deposition, at p. 40. The IDHR report consistently found no substantiation to Mr.

Taylor's claims of age discrimination nor that any of the warnings given to Taylor subjected

him to any materially adverse employment action or caused him any loss in pay or benefits.

*Id*. at pp. 6, 10 and 13.

RESPONSE: Dispute. Plaintiff objects to the IDHR report as prejudicial under FRE 403 and in

that it sets forth legal conclusions and would prejudice and confuse the jury.  Def. Ex. 2, p. 1.

Without waiving objection, Plaintiff admits as to the remainder of statement 7.

**Prior Settlement of Taylor's Federal Lawsuit 16-cv-05210**

8.  In 2016 plaintiff filed a race discrimination lawsuit against PSC and Hawthorne Mall before

Judge Blakey of the Northern District of Illinois under docket number 16-cv-05210.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 8 as irrelevant to the present

lawsuit under FRE 401 and prejudicial under FRE 403.  Without waiving objection, Plaintiff

admits that plaintiff filed a separate race discrimination lawsuit against PSC and Hawthorn Mall

before Judge Blakey of the Northern District of Illinois under docket number 16-cv-05210.

9.  Maudia Washington appeared for Mr. Taylor as his counsel and represented him through the

time that the case settled. *See* Exhibit 3; *see also* Exhibit 6, Richard Taylor's deposition, at

33, 38-39.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 9 as irrelevant to the present

lawsuit under FRE 401 and prejudicial under FRE 403.  Without waiving objection, Plaintiff

3

admits to statement 9.

10. The prior suit was settled before Magistrate Judge Gilbert. *See* Exhibit 4

RESPONSE: Dispute. Plaintiff disputes and objects to statement 10 as irrelevant to the present

lawsuit under FRE 401 and prejudicial under FRE 403. Without waiving objection, Plaintiff

admits that the prior lawsuit that involved only PSC and Hawthorn Mall was settled before

Magistrate Judge Gilbert.

11. The parties entered into a settlement agreement which Mr. Taylor testified he signed and that

he received the settlement proceeds described in the settlement agreement. *See* Settlement

Agreement attached as Exhibit 5; *see also* Exhibit 6, Richard Taylor's deposition, at pp.

32-33, 38-39

RESPONSE: Dispute. Plaintiff disputes and objects to statement 11 as irrelevant to the present

lawsuit under FRE 401 and prejudicial under FRE 403. Plaintiff disputes page 4 of Def.

Deposition of Richard Taylor Ex. 2 as not authenticated. Page 4 was excluded from the

deposition exhibit and, as such, Plaintiff could not have authenticated page 4. Without waiving

objection, Plaintiff admits to statement 11 in that Taylor identified his signature to what is

marked as Defense Deposition of Richard Taylor Exhibit 2 pages 1, 2, 3, 5, and 6. *See generally*

Pl. Ex. B, Def. Ex. 2 of Richard Taylor's Deposition.

12. Pursuant to the settlement agreement, Taylor released all claims against PSC except for his

Charge 2018CA2594 before the Illinois Department of Human Right in which he alleged age

discrimination and a charge he had filed before the National Labor Relations Board. *See*

Exhibit 5 at pp. 1 and 3.

RESPONSE:  Dispute. Plaintiff disputes statement 12 as irrelevant to the present lawsuit under FRE 401 and prejudicial under FRE 403.  Without waiving objection, Plaintiff admits to statement 12.

13. Pursuant to the terms of the settlement agreement, Taylor could proceed with his claims asserted in Charge 2018CA2594, but only "as currently pled." *Id.* at pp. 1, para. 6.

RESPONSE: Dispute. Plaintiff disputes statement 13 as irrelevant to the present lawsuit under FRE 401 and prejudicial under FRE 403.  Without waiving objection, Plaintiff admits to statement 13.

14. Pursuant to the terms of the settlement agreement, Taylor agreed to never apply for re-employment with PSC.  *Id.* at p. 4, para. 7.

RESPONSE:  Dispute. Plaintiff disputes statement 14 as irrelevant to the present lawsuit under FRE 401 and prejudicial under FRE 403.  Plaintiff also disputes statement 14 for lack of authentication as to page 4 cited in statement 14 which was not included in Def. Ex. 2 at Taylor's deposition and, thus, not authenticated.  Without waiving objection, Plaintiff admits to statement 14.  *See generally* Pl. Ex. B, Def. Ex. 2 of Richard Taylor's Deposition.

15. Judge Blakey entered a final dismissal order for the case on December 3, 2018.  *See* Exhibit 9.

RESPONSE:  Dispute. Plaintiff disputes statement 15 irrelevant to the present lawsuit under FRE 401 and prejudicial under FRE 403.  Without waiving objection, Plaintiff admits to statement 15.

**Taylor's Notices For Improvement and Performance Issues at PSC**

16. Taylor hired on with PSC on May 29, 2015. *See* Exhibit 2 at p. 1.

RESPONSE: Admit. Plaintiff adds that PSC hired Taylor to work at Hawthorn Mall on May 29, 2015, and that Mishra was not a part of the hiring decision. Pl. Ex. A, Taylor Affidavit at 2, ¶12; Pl. Group Ex. D, PSC Transfer From [sic], at IDHR-288. Plaintiff adds that Mishra stated in his declaration that he began working at PSC, Old Orchard Mall in 2016. Def. Ex. 8, Mishra's Declaration, at 1, ¶2.

17. When Taylor was first hired by PSC, Taylor was 59 years old. *See* Exhibit 6, Richard Taylor's deposition, at p. 25-26.

RESPONSE: Admit.

18. Plaintiff began working for PSC at Hawthorn Mall in 2015 and was later transferred to Old Orchard Mall. *Id.* at p. 26, 28.

RESPONSE: Admit. Plaintiff clarifies that Taylor was transferred to Old Orchard Mall on December 23, 2015 with his first day at Old Orchard Mall on December 27, 2015. Pl. Group Ex. D, PSC Transfer From [sic], at IDHR-288.

19. When plaintiff started working at Old Orchard Mall, there were no PSC security guards older than him. *Id* at pp. 28 and 75.

RESPONSE: Admit.

20. Rishi Mishra was his direct supervisor at Old Orchard Mall and Taylor would discuss his job duties with Mishra and Mishra would discuss Taylor's job performance with Taylor. *Id.* at 46-47.

RESPONSE: Dispute. Statement 20 mischaracterizes Taylor's testimony and is thus misleading.

Taylor confirms that he had discussions with Mishra regarding his job performance while at Old

Orchard Mall, but he did not specify who initiated the discussions with whom.  Def. Ex. 6,

Richard Taylor's Deposition, at 47:17-23.

21. When plaintiff's employment at PSC was terminated, plaintiff was working at Old Orchard

   Mall.  *Id.* at p. 27.

RESPONSE:  Admit.

22. It was Mishra who told him that his employment with PSC was being terminated. *Id.* at p. 24

   and 46.

RESPONSE:  Admit.  Plaintiff points out that page 46 of Taylor's deposition does not state this.

Def. Ex. 6 Richard Taylor's Deposition, at 46.  Plaintiff admits that Mishra did tell Taylor that his

employment with PSC was being terminated.  Def. Ex. 6 Richard Taylor's Deposition, at

24:6-12.

23. Mishra's Declaration pursuant to 28 U.S.C. § 1746 is attached as Exhibit 8.  Among other

   things, Mishra declares in his declaration that as a result of his being the Security Director for

   PSC at Old Orchard Mall where Richard Taylor worked, Mishra has personal knowledge that

   the PSC records contained in Group Exhibit 7 were made at or near the time of the events

   described by a person with personal knowledge of the events described; the records were

   kept in the ordinary course of business by PSC; and the making of such records was a regular

   practice at PSC. *See* Exhibit 8.

RESPONSE:  Dispute. Plaintiff disputes and objects to statement 23 for Declarant's lack of

personal knowledge as required under FRCP 56(c)(4) as to those PSC records in Def. Group

Exhibit 7 dated 2015 involving Hawthorn Mall.  Declarant states that he worked at PSC starting

in 2016 and at Old Orchard Mall.  Def. Ex. 8, Declaration of Rishi Mishra, at 1,  ¶2.  Declarant

admits in an email that he is not familiar with procedures at other centers as to their patrol tours

which many of these records address.   Def. Gp. Ex. 7, Email Dated April 22, 2017, atPSC 405.

Plaintiff further objects to the admissibility of Def. Group Exhibit 7 in its entirety based on lack

of foundation as the declaration lacks specificity in paragraph 5.  Without waiving objection,

Plaintiff admits to statement 23 as they relate to 2016 records, except for those 2016 records that

contain double hearsay, or are not properly a business record under FRE 806(6), to which

Plaintiff objects.

**Hawthorn Mall (2015)**

24. On August 5, 2015, Security Dispatch Andrey Melnick  documented that Mr. Taylor took a

    50-minute break rather than a 30-minute break.  When asked about his break, said something

    unintelligible and went back to patrolling. See Group Exhibit 7 at p. PSC 9.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 24 as hearsay and double

hearsay as to what the author of the email heard Taylor say, neither of which are subject to any

hearsay exception, lacking foundation, and without proper authentication as articulated in

Plaintiff's response to statement 23.  Without waiving Plaintiff's objections, Plaintiff admits that

he was *accused* of taking a 50 minute break, but adds that he was not issued a Notice for

Improvement.

25. On August 6, 2015, Security Director Lucia Garcia and Assistant Security Director Nicholas

    Blaylock met with Mr. Taylor regarding his midnight shift patrol activity.  Mr. Taylor was not

    reporting his inspections, taking both of his 30-minute breaks together, and was captured on

    video sleeping in the dispatch office at his supervisor's desk. Mr. Taylor denied that he was

sleeping on duty even though it was documented on video. Mr. Taylor was reminded that he was under PSC's 90-day probation period for new employees. *Id.* at p. PSC 9.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 25 as hearsay and not subject to any hearsay exception, lacking foundation, and without proper authentication as articulated in his response to statement 23. Without waiving Plaintiff's objections, Plaintiff admits that he was *accused* of sleeping during his shift, denies that he did this, was not shown a video, nor issued a Notice for Improvement. Pl. Ex. A, Taylor Affidavit, at 6, ¶ 6.

26. On August 13, 2015, Assistant Security Director Nicholas Blaylock, and Security Director Lucia Garcia, heard dispatch call Mr. Taylor over the radio on several occasions with no response. When Taylor was advised that he must keep his radio on at all times during his shift. Taylor responded with an attitude and used improper radio traffic to call dispatch. Two hours later, Mr. Blaylock attempted to call Mr. Taylor on his radio from dispatch and received no response after three consecutive attempts. *Id.* at p. PSC 3.

RESPONSE: Dispute. Plaintiff objects to statement 26 as hearsay and double hearsay as to statements the author of the email, Mike Tiberi, heard from what Blaylock and Garcia had heard, neither of which are subject to any hearsay exception, lack of foundation, and without proper authentication as articulated in his response to statement 23.

27. Mr. Taylor reported to work 30 minutes late on August 17, 2015. *Id.* at PSC 53.

RESPONSE: Dispute. Plaintiff objects to statement 27 as hearsay and double hearsay as to the reason written for Taylor's tardiness, neither of which are subject to any hearsay exception, and without proper authentication as articulated in his response to statement 23.

28. On September 11, 2015, Mr. Blaylock heard officer Anthony Miranda attempt to call Mr.

Taylor over the radio.  It took several attempts to obtain a response from Mr. Taylor.  Mr. Blaylock noted that this has been an ongoing issue and he has personally spoken with Mr. Taylor about the importance of radio responses.  *Id.* at p. PSC 4.

RESPONSE:  Dispute.  Plaintiff objects to statement 28 as hearsay, double hearsay as to statements the author of the email heard from officer Miranda, neither of which are subject to any hearsay exception, lack of foundation, and without proper authentication as articulated in his response to statement 23.

29. On December 12, 2015, Taylor received a verbal write up for standing by a "Grab & Go" talking to a female employee for at least 20 minutes, and only completing 1 to 2 tours in a 7 hour and 30-minute time span.  Mr. Taylor was advised of the importance of using his case mobile phone at all times and staying visible on patrol.  *Id.* at p. PSC 1.

RESPONSE:  Dispute.  Plaintiff objects to statement 29 as hearsay and double hearsay as to statements the author of the email heard from Pankow, neither of which are subject to any hearsay exception, lack of foundation, and lack of proper authentication as articulated in his response to statement 23.  Without waiving objection, Plaintiff adds that the email states that despite Taylor's acknowledgement and compliance, the author reprimanded Taylor with a write-uat *Id.* at PSC 1; PSC 56.

30. When Assistant Security Director, Nicholas Blaylock, attempted to serve Mr. Taylor with a verbal write up Mr. Taylor stood up from his seat and walked out of the office.  Mr. Taylor was advised that he was being insubordinate, and Mr. Blaylock would not tolerate such behavior.  Mr. Blaylock asked Mr. Taylor to return to the office to sign his write up and he refused, stating that he would only speak with the Security Director, Lucia Garcia. *Id.* at p.

PSC 2.

RESPONSE:  Dispute.  Plaintiff objects to statement 30 as hearsay, double hearsay as to statements the author of the email heard from Taylor, neither of which are subject to any hearsay exception, lack of foundation, and without proper authentication as articulated in his response to statement 23.  Plaintiff disputes that he was insubordinate.  Pl. Ex. A, Taylor Affidasy, at3, ¶20.  Plaintiff points out that statement 30 stems from the same incident  as statements 29 and is not a separate incident.

31. Mr. Taylor also received a notice for improvement on December 12, 2015, regarding his failure to stay on "Detex tours" at all times.  Mr. Taylor, after receiving his notice for improvement, refused to speak with his supervisor and refused to sign his verbal write up. *Id.* at p. PSC 56.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 31 for lack of proper authentication as articulated in his response to statement 23 and hearsay as to the contents of the Notice for Improvement.  Without waiving his objections, Plaintiff notes that the face of the document states it was a "verbal warning" and that Plaintiff denies he refused to speak to his supervisor or that he refused to sign the write-up.  Def. Group Ex. 7 at PSC 56; Def. Ex. 6, Richard Taylor's Deposition, at 51:8-14.  Plaintiff points out that statement 31 is directly related to statements 29 and 30 and is not a separate incident and that the NOI does not state that Taylor was talking to a female employee as described in statement 29.  Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices of improvement.  *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

32. On December 13, 2015, Mr. Taylor received a written notice of improvement for disregard of Officer Safety Procedures. Mr. Taylor failed to report a man with a gun and interacted with the man before notifying Security Communications and his superior officer. *Id.* at p. PSC 5.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 32 for lack of proper authentication as articulated in his response to statement 23 and hearsay as to the contents of the Notice for Information. Without waiving his objections, Plaintiff disputes the description of the incident. Plaintiff informed dispatch that a patron had informed him that the patron had a gun *card* and wanted to know if he could bring a gun to the mall. P. Gp. Ex.D, Richard Taylor Letter, IDHR-235; William Macdonald Report, at IDHR-228; PSC Dispatch Report, at IDHR-227 (for legibility purposes, also provided in Def's Initial Disclosures, at PSC 06).

33. On December 14, 2015, PSC's Assistant Security Director spoke with the General Manager of Hawthorn Mall, Jeff Rutzen. Mr. Rutzen reported that, on December 13, 2015, a fire alarm went off in the mall. Mr. Taylor attempted to evacuate nearby tenants and was "very unprofessional." Mr. Rutzen reported that he received complaints from multiple tenants in the mall about Mr. Taylor. *Id.* at p. PSC 15.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 33 as hearsay, double hearsay as to statements made by Rutzen, a non-PSC employee, to the author of the email, neither of which are subject to any hearsay exception, lack of foundation, and without proper authentication as articulated in his response to statement 23. Plaintiff adds that he believed the alarm warranted evacuation and the dispatcher was not answering his call over the two-way radio. Pl. Group Ex. D, Richard Taylor Letter, at IDHR-234. Plaintiff adds that a recording over the public announcement system instructed evacuation and that his supervisor had also directed

him to evacuate the mall.  Pl. Ex. A, Richard Taylor Affidavit, at 2, ¶ 8.

34. On December 15, 2015, Assistant General Manager of Hawthorn Mall, Jeff Rutzen,

    requested that PSC remove Mr. Taylor from duty at Hawthorn Mall "In light of the issue on

    Sunday night with the fire alarm, along with numerous other complaints I have received from

    shoppers and retailers." *Id*. at p. PSC 16.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 34 as hearsay, double hearsay

as to statements made by shoppers and retailers to Rutzen (not a PSC employee), neither of

which are subject to any hearsay exception, lack of foundation, and without proper

authentication as articulated in his response to statement 23.  Plaintiff reasserts his additional

facts as offered in statement 33.

35. PSC employee Breanna Pankow gave a written statement about the fire alarm incident, and

    she stated in part that: A fire alarm went off on December 13, 2015, at 6:35 p.m.  Mr. Taylor

    went into a panic and told all the patrons to leave.  Mr. Taylor attempted to tell Alyssa

    Wardrop and Jackie DeLeon to tell the patrons to leave, but they refused because they knew

    the mall policy regarding this matter.  Mr. Taylor approached the dispatch window while the

    dispatcher was fielding multiple calls and radio traffic.  Mr. Taylor began hitting the window

    and asking Ms. Pankow to announce an evacuation over the PA system, and she refused,

    stating that she could not do so without management's permission. Mr. Taylor walked away

    and resumed evacuation attempts.  An employee of a mall tenant (Snickelfritz) came to

    dispatch to report (referring to Mr. Taylor) "This guy right here scared and freaked everyone

    out!" The mall employee said that he would speak with mall management the following

    Monday because he wanted Mr. Taylor terminated. *Id*. at p. PSC 17.

RESPONSE:  Dispute.  Plaintiff objects to statement 35 as hearsay, lack of foundation, without proper authentication as articulated in his response to statement 23, and double hearsay as to statements made by Alyssa Wardop, Jackie DeLeon, and Ms. Panow, and an employee of a mall tenant to the author of the email.

36. PSC employee Jacky DeLeon signed a written statement indicating she received a complaint from a different tenant that Mr. Taylor was "kicking her out of her kiosk yelling at her and freaking everyone out." *Id.* at PSC 18.

RESPONSE:  Dispute.  Plaintiff  objects to  statement 34 as hearsay, lack of foundation, without proper authentication as articulated in his response to statement 23, and double hearsay as statements that a tenant said to the author of the email.

37. PSC employee Alyssa Wardrop authored a detailed email corroborating the statements provided by Breanna Pankow and Jacky DeLeon.  In closing, Ms. Wardrop wrote "To sum it up Taylor was telling people to leave the mall without being cleared to do so and he told me and Jackie to do the same which we did not because we weren't given a clear to do so. It was very confusing having one officer telling patrons one thing while another officer tells something else. Patrons and tenants were very upset." *Id.* at p. PSC 19-20.

RESPONSE:  Dispute.  Plaintiff  objects to  statement 37 as hearsay, lack of foundation, without proper authentication as articulated in his response to statement 23, and double hearsay as to what any of the people mentioned in the email said to the author of the email.

38. On December 18, 2015, Assistant Security Director Nicholas Blaylock and Security Director Lucia Garcia spoke with Mr. Taylor regarding the fire alarm incident. Mr. Taylor first stated that he had supervisor approval to evacuate the mall, but later admitted that he evacuated first

and notified his supervisor of the evacuation later. Mr. Blaylock wrote "It is clear that Officer Taylor is unable to give accurate information of what happened and has shown dishonesty towards his Security Directors." *Id*. at p. PSC 21.

RESPONSE: Dispute. Plaintiff objects to statement 38 as hearsay, double hearsay as to Taylor's statements to the author of the email, lack of foundation, and without proper authentication as articulated in his response to statement 23.

39. Taylor recalls the fire alarm incident and admits he was telling stores and patrons to get out of the building. *See* Exhibit 6, at p. 48. On December 24, 2015, Mr. Taylor was informed by PSC that he would no longer work at Hawthorn because the client requested that Taylor no longer be scheduled at that location. *Id*. at p. PSC 55. Following the incident with the fire alarm, Taylor was transferred from Hawthorn Mall to Old Orchard Mall. *See* Exhibit 6, Taylor's deposition, at p. 49.

RESPONSE: Dispute. Plaintiff objects to statement 39 as hearsay, double hearsay as to Taylor's statements to the author of the email, lack of foundation, and without proper authentication as articulated in his response to statement 23. Without waiving any objection, plaintiff disputes that he was informed that the client requested Taylor no longer be scheduled at Hawthorn Mall. Def. Ex. 6, Richard Taylor Deposition, at48:17-22. Plaintiff adds that in its email, Taylor repeatedly asked who made the complaints against him to have him fired reflecting his state of mind. Def. Group Ex. 7, at PSC 55. Plaintiff admits that he was transferred from Hawthorn Mall to Old Orchard Mall after the fire incident.

40. On December 24, 2015, Mr. Taylor was informed by PSC that he would no longer work at Hawthorn because the client requested that Taylor no longer be scheduled at that location.

*Id*. at p. PSC 55. Following the incident with the fire alarm, Taylor was transferred from

Hawthorn Mall to Old Orchard Mall. *See* Exhibit 6, Taylor's deposition, at p. 49.

RESPONSE: Dispute. Plaintiff objects to statement 40, Def. Group Ex. 7, at PSC 55 as hearsay,

double hearsay as to Taylor's statements to the author of the email, lack of foundation, and

without proper authentication as articulated in his response to statement 23. Without waiving

any objection, plaintiff disputes that he was informed that the client requested Taylor no longer

be scheduled at Hawthorn Mall. Def. Ex. 6, Richard Taylor Deposition, at 48:17-22. Plaintiff

adds that in its email, Taylor repeatedly asked who made the complaints against him relating to

the termination thus reflecting his state of mind. Def. Group Ex. 7, at PSC 55. Plaintiff admits

that he was transferred from Hawthorn Mall to Old Orchard Mall on December 27, 2018.

**Old Orchard Mall (2016-2018)**

41. Within his first month at Old Orchard, Taylor received a notice for improvement for failing to

return loaned equipment to dispatch. Mr. Taylor refused to sign his notice for improvement.

*See* Exhibit 7 at PSC 29.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 41 as hearsay to its contents.

Defendant's mischaracterization that Taylor received a Notice for Improvement is misleading as

Plaintiff disputes that he received personally or otherwise, a Notice for Improvement as implied

in statement 41. Pl. Ex. A, Taylor Affidavit, at 3, ¶ 23. Plaintiff also disputes that he refused to

sign the Notice for Improvement. Def. Ex. 6, Richard Taylor's Deposition, at 51:8-14. Without

waiving objection, Plaintiff admits that PSC issued a Notice for Improvement on January 18,

2016. Plaintiff adds that the Notice for Improvement cited in statement 41 reflects on its face

progressive discipline warnings of verbal, written, final, and suspension, and "Warning: Verbal"

is marked, and it states, "This is Officer Taylor's first write up; 'verbal'." Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices of improvement. *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

42. Taylor received a notice for improvement on March 22, 2016, for reporting to his shift late due to not being in full uniform, and for refusing a uniform inspection. *Id*. at p. PSC 52.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 42 as hearsay as to the contents of Def. Group Ex. 7, at PSC 18. Plaintiff also disputes that he never reported to work out of uniform, refused a uniform inspection, or that he personally received a Notice for Improvement for such infractions. Pl Ex. A, Taylor Affidavit, at 3, ¶ 23. Plaintiff adds that the Notice for Improvement issued states on its face, "Warning: Written" and states, "This is Officer Taylor's second write up; 'written'." Plaintiff denies that he refused to sign the Notice for Improvement or that he appeared out of uniform. *Id*. at 3, ¶¶ 23-24; Def. Ex. 6, Richard Taylor's Deposition, at 51:8-14. Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices of improvement. *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

43. Mr. Taylor arrived two hours late to his shift on October 9, 2016. *Id*. at PSC 47.

RESPONSE: Dispute. Plaintiff disputes statement 43 as hearsay as to the contents of Def. Group Ex. 7, at PSC 47. Without waiving his objection, Plaintiff admits that he was late to work because he did not know what time his shift started. Pl. Ex. A, Taylor Affidavit, at 4, ¶ 26. Plaintiff notes that on the face of Def. Group Ex. 7, p 47 is a handwritten note "Pass/No Write" and there is a handwritten explanation in the middle of the page indicating Taylor thought he worked different shift hours. The document contains no signature by any administrator in the

areas provided. Def. Group Ex. 7, at PSC 47.

44. Mr. Taylor received a notice for improvement on November 8, 2016, for unprofessional conduct and failing to follow procedure.  When Mr. Taylor was asked to stand by and observe unattended bikes in the mall, Mr. Taylor responded "Call a supervisor, I'm done with these games." *Id.* at p. PSC 46.

RESPONSE:  Dispute.  Plaintiff disputes statement 44 as hearsay as to the content of Def. Group Ex. 7, at PSC 18.  Defendant's mischaracterization that Taylor received a Notice for Improvement is misleading as Plaintiff disputes that he personally received a notice of improvement as implied.  Plaintiff adds that the Notice for Improvement issued is marked on its face, "Warning: Verbal" and states, "This is Officer Taylor's first disciplinary write up; "verbal" within the previous 90 days."

45. On November 13, 2016, Mr. Mishra reported that Mr. Taylor continually disrespected Supervisors and staff.  Mr. Taylor's supervisor presented him with a write-up, however, Mr. Taylor refused to look at it and walked out of the office.  Mr. Taylor not only refused to sign his write up but also refused to sit down and discuss it or know what the write up was about. The General Manager of Old Orchard, Serge Khalimsky, also reportedly had "run ins" with Mr. Taylor and was beginning to display interest in removing him from Old Orchard. *Id.* at p. PSC 407.

RESPONSE:  Dispute.  Plaintiff disputes statement 45 as hearsay as to the content of Def. Group Ex. 7, at PSC 407 and double hearsay as to the statements of the person identified as "Ed" and of the general manager to Mishra, the author of the email.  Without waiving objection, Plaintiff admits that Def. Group Ex. 7 at PSC 407 is an email sent from Mishra to Regional Director

Acevedo.  Plaintiff adds that Mishra stated he wanted to suspend Taylor based on what Taylor said in front of the staff and Mishra asked Acevedo for direction as to whether he should suspend Taylor.  Def. Group Ex. 7, email dated November 13, 2016, at PSC 407, last ¶.  Plaintiff denies that he refused to sign the Notice for Improvement or was disrespectful to his supervisors and staff.  Def. Ex. 6, Richard Taylor's Deposition, at 51:8-14; Pl. Ex. A, Taylor Affid., at 3, ¶20. Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices for improvement.  Pl. Group Ex. D, *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

46. On December 3, 2016, PSC Supervisor Brian Stranz said that he was going to contact Human Resources because of instances involving Taylor. *Id*. at p. PSC 407.

RESPONSE:  Dispute.  Plaintiff objects to statement 46 as hearsay as to the content of Def. Group Ex. 7, at PSC 407 and double hearsay as to what Stranz said to Mishra, the author of the email.

47. Mr. Taylor received notice for improvement on March 25, 2017, regarding unprofessional conduct over the two-way radio system.  Mr. Taylor refused to sign his notice for improvement. *Id*. at p. PSC 397.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 47 as hearsay as to the content of Def. Group Ex. 7, at PSC 18.  Defendant's mischaracterization that Taylor received a Notice for Improvement is misleading, as Plaintiff disputes that he personally received this as implied in statement 47.  Plaintiff adds that the Notice for Improvement issued is marked on its face, "Warning: Verbal" Notice for Improvement and states, "This is Richard Taylor's first 'verbal' disciplinary write up." Plaintiff denies that he refused to sign the document.  Def. Ex. 6, Richard

Taylor's Deposition, at 51:8-14.  Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices for improvement.  *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

48. On April 22, 2017, Mr. Taylor refused to call out his Jewelry store checks in addition to scanning those checks into Case Mobile Tours, which was PSC's practice at Old Orchard. Mr. Taylor was warned for unprofessional conduct over the radio.  *Id*. at p. PSC 405407.

RESPONSE:  Dispute.  Plaintiff disputes statement 48's characterization of the contents of the email. The email states that PSC "encourage[s]" its officers to use the CASE mobile tours and call out checks.  Plaintiff notes that in this email Mishra acknowledges that he is unsure of other shopping centers' procedures regarding reporting during patrols and seeks Regional Manager Acevedo's instructions as to whether patrols are done using both two-way radio call-ins and CASE Mobile scan or just the latter.  Def. Group Ex. 7, at PSC 405-407, email dated April 22, 2017.  Plaintiff further disputes and objects to the contents of an email received by Mishra on April 22, 2017 from "supervisor1172@pscsite.com" and forwarded by Mishra to Regional Director Acevedo as hearsay of this unidentified individual.

49. On or about June 26, 2017, the General Manager of Old Orchard Mall, Serge Khalimsky, asked Mr. Mishra to remove Mr. Taylor from the Old Orchard site due to his performance over the past 18 months, including recent arguments during a training session involving the mall's active shooter guidelines. *Id*. at p. PSC 405.

RESPONSE:  Dispute.  Plaintiff disputes and objects to statement 49 as hearsay as to the content of Def. Group Ex. 7, at PSC 405 as well as those statements made by Serge Khalimsky to Mishra.  Without waiving objection, Plaintiff disputes the events of the training as described in

statement 49.  Pl. Ex. A, Taylor Affid., at 3, ¶21-22.

50. On January 26, 2018, Mr. Taylor refused to take his drug test. *Id*. at p. PSC 404.

RESPONSE:  Dispute.   Plaintiff objects to statement 50 as hearsay as to the content of Def.
Group Ex. 7, at PSC 404.  Plaintiff also disputes Statement 50 as it misstates the facts and is
therefore misleading.  Taylor did not refuse to take a drug test.  Def. Group Ex. 7, at 404; Def.
Ex. 6, Richard Taylor's Deposition,  58-59:23-2, 65:6-8, 73-74:15-4; Pl. Ex. A, Taylor Affid., at
5, ¶ 34.  Mr. Taylor testified that he took the drug test.  Def. Ex. 6, Richard Taylor's Deposition,
at 64:8-11.  Plaintiff adds that Mr. Taylor said he would take the drug test the next day because
he wanted a trusted co-worker to be present as a witness/observer.  Pl. Ex. A, Taylor Affidavit, at
5, ¶ 34.  Plaintiff further adds the PSC does not state in its employee handbook that when asked
to take a drug test, the test must be performed immediately.  Pl. Group Ex. D, PSC Employee
Handbook, at IDHR-518.

51. Mr. Taylor received a notice for improvement on March 17, 2018, regarding making
     unprofessional and personal remarks over the two-way radio system. Mr. Taylor refused to
     sign his notice for improvement. *Id*. at p. PSC 396.

RESPONSE:  Dispute.  Plaintiff disputes and objects statement 51 as hearsay as to the content of
Def. Group Ex. 7, at PSC 18.  Plaintiff adds that the Notice for Improvement issued is marked on
its face, "Warning: Verbal," and states, "Will review performance: 90 days," and, "This is
Richard Taylor's first verbal warning write up."  Plaintiff denies that he personally received a
Notice for Improvement for such infractions.  Plaintiff adds that the most recent Notice for
Improvement issued to him was one year earlier on March 25, 2017.  Plaintiff denies that he
refused to sign the Notice for Improvement or the two memos.  Def. Ex. 6, Richard Taylor's

Deposition, 51:8-14, 51:15-18; Pl. Ex. A, Taylor's Affidavit, at 5-6, ¶ 39. Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices for improvement. *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

52. On March 23, 2018, Mr. Taylor refused to sign two memos. Rishi Mishra requested that Mr. Taylor speak with him regarding his failure to sign the memos, and Mr. Taylor refused. Mr. Mishra advised Mr. Taylor "If you don't want to sign the memo, you can go home." Mr. Taylor responded, "I'll sign them later on tomorrow, not now since I'm leaving." Mr. Taylor was advised that he had 4-5 minutes remaining in his shift and he still had time to sign the memos. Mr. Taylor was non-responsive and refused to speak with Mr. Mishra for the remaining 4 minutes of his shift. *Id*. at PSC 402-403.

RESPONSE: Dispute. Plaintiff disputes statement 52 as hearsay as to the content of Def. Group Ex. 7, at PSC 404 and double hearsay as to those statements by Johnathan Vidal and Richard Taylor to Mishra. Without waiving objection, Plaintiff denies the description of events as asserted in statement 52. Pl. Ex. A, Taylor Affidavit, at 5-6, ¶ 39. Plaintiff denies that he refused to sign the memos. Def. Ex. 6, Richard Taylor Deposition, at 59:21-24; Pl. Ex. A, Taylor Affidavit, at 5-6, ¶ 39. Plaintiff adds that there is no stated policy in the PSC Employee Handbook mandating employees to sign memos. *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

53. Mr. Taylor received a written notice for improvement arising out of an incident on March 26, 2018. Assistant Security Director, Brandon Ng, advised Mr. Taylor to conduct Case Mobile scan point tours and broadcast daily checks via two-way radio. Mr. Taylor walked away from Mr. Ng, stating "you have to pay me extra for both." Mr. Taylor proceeded to walk to

the elevator and attempted to close the door on Mr. Ng. As the doors closed Mr. Taylor stated, "Go ahead have Rishi write me up." Security dispatch, Mr. Ng, and Supervisor Benjamin Kornstein made several attempts to contact Mr. Taylor over radio and through his personal cell phone. Mr. Taylor did not answer those calls and returned to the office 10 minutes later. Mr. Taylor refused to sign his written notice for improvement. As Mr. Taylor's notice for improvement was being prepared, he appeared to place a telephone call to his attorney stating, "I have another one for you." *Id*. at p. PSC 400-402.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 53 as hearsay, double hearsay as to statements made by Taylor to Ng, and lacking foundation. Plaintiff disputes Def. Group Ex. 7, at PSC 401 as reflecting an incident on March 26, 2018. Plaintiff objects, based on speculation and lack of personal knowledge, Ng's assertion that Taylor was calling his attorney as described. Plaintiff objects to the inclusion of page PSC 401 as it is not part of this sequence of events because it is a document not dated March 26, 2018. Plaintiff denies the description of events as portrayed in statement 53. Pl. Ex. A, Taylor's Affidavit, at 6, ¶¶ 42-43. Plaintiff adds that the PSC Employee Handbook indicates that claims of discrimination will be kept confidential to the extent possible. Pl. Group Ex. D, PSC Employee Handbook, at IDHR-520. Plaintiff adds that the Notice for Improvement issued is marked on its face, "Will Review Performance: 90 days" and, "This is Richard Taylor's second disciplinary warning 'written'." Plaintiff further notes that there is no stated policy in the PSC Employee Handbook mandating employees to sign notices for improvement. *See generally* Pl. Ex. D, Employee Handbook at IDHR-510-38.

54. March 27, 2018, Serge Khalimsky, General Manager of Westfield Old Orchard, requested

that Richard Taylor be removed from duty immediately. Mr. Khalimsky noted that he made

this request three months earlier. *Id*. at PSC 409.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 54 as hearsay as to the content

of Def. Group Ex. 7, at PSC 409. Plaintiff points out that there is no record of a request for

Taylor's removal by Serge Khalimsky made within three months prior to this email.

55. Taylor's last day of work at PSC was March 26, 2018. His employment with PSC was

terminated due to poor job performance. *Id*. at PSC 399.

RESPONSE: Dispute. Plaintiff disputes and objects to statement 55 as hearsay as to the content

of Def. Group Ex. 7, at PSC 399. Without waiving objection, Plaintiff admits that his last day of

work was March 26, 2018, but disputes that it was based on his job performance because, as

established throughout, PSC used pretext to discipline and to criticize his work performance.

Plaintiff adds that he was suspended on March 29, 2018 pending an investigation and terminated

on April 19, 2018 after the conclusion of that investigation. Def. Group Ex. 7, at PSC 399; Def.

Ex. 6, Richard Taylor Deposition, 74-75:14-4; Pl. Exhibit A, Taylor Affidavit, p.6, ¶ 44.

Plaintiff further notes that PSC provided no indication on the Status Change form that plaintiff

received previous disciplinary actions. Def. Group Ex. 7, at PSC 399.

56. In his age discrimination claim before the Illinois Department of Human Rights, Taylor

claimed he was never allowed to drive a vehicle while working at Old Orchard Mall. *See*

Exhibits 1 and 2. Plaintiff's claim was denied as lacking substantial evidence. *See* Exhibit 2.

In his deposition testimony in this case, Taylor admitted he was allowed to drive a vehicle

while working at Old Orchard Mall. *See* Exhibit 6, at pp. 51-55, 68-69, 72, 77.

RESPONSE: Dispute. Statement 56 mischaracterizes the facts and thus statement 56 is

misleading.  Def. Ex. 1 page 3 states that between November 2017 and March 29, 2018, Taylor was not allowed to drive PSC's vehicles and that he was restricted to walk patrol.  Def. Ex. 1, at 3, § I.B.3.  Plaintiff objects to the IDHR findings as irrelevant, prejudicial, and non-binding upon this Court, and thus do not warrant admission or denial.  Plaintiff objects to statement 56 mischaracterization of Plaintiff's testimony.  Taylor was asked about his job duties and he stated that it included driving the vehicles.  Def. Ex. 6, Richard Taylor Deposition, 52-53:23-2.  When he was asked about driving a vehicle, Taylor made it clear that only one shift supervisor assigned vehicle patrol to him and others did not. Def. Ex. 6, Richard Taylor's Deposition, 70-72:6-9.  Further, when the first shift supervisor left PSC in January or February 2018, Plaintiff was only assigned foot patrol until his suspension.  Pl. Ex. A, Taylor's Affidavit, at 5, ¶ 36.

57. Taylor does not recall receiving any Notices for improvement from his supervisors before the termination of his employment with PSC.  *See* Exhibit 6, at p. 76.

RESPONSE:  Dispute. Plaintiff disputes the citation for statement 57 and admits that Taylor testified that none of Taylor's supervisors provided him with any Notices of Improvement.  Def. Ex. 6, Richard Taylor's Deposition, 75:8-11.

### PLAINTIFF'S ADDITIONAL STATEMENT OF FACTS PURSUANT TO LOCAL RULE 56.1(B)(3)(C).

**Taylor's Training And Experience**

58. Mr. Taylor has worked in security since graduating from high school in 1975 and had nearly 40 years of experience when he started working for PSC in 2015.  Def. Ex. 6, Richard Taylor's Deposition, at 7:10-16; Pl. Ex. A, Taylor's Affidavit, at 1, ¶ 3.

59. While at Hawthorn Mall, Mr. Taylor received training on PSC's method of running dispatch and watching the computers which he performed while at Hawthorn.  Def. Ex. 6, Richard

Taylor's Deposition, 65-66:18-2, 68:5-6. Because he transferred from Hawthorn Mall, management at Old Orchard Mall was aware of his training in running dispatch. *Id*., 75-76:24-7. Mr. Taylor was never assigned dispatch while at Old Orchard Mall, but younger officers were assigned this duty. *Id*. at 66:6-17.

60. PSC's Employee Handbook states that it has an open door policy in which an employee with a question or problem is encouraged to discuss with management. Pl. Group Ex. D, PSC Employee Handbook, at IDHR-525.

**Taylor's Pay Increases And Reductions**

61. Mr. Taylor's initial hourly pay rate was $9.75 per hour. Pl. Group Ex. D, PSC Employee Raise Form, at IDHR-321. Sometime before October 10, 2015, Mr. Taylor received a pay increase to $9.80. Pl. Group Ex. D, PSC Employee Raise Form, at IDHR-321. On October 10, 2015, Mr. Taylor received his second pay increase from $9.80 to $10.10 per hour. Pl. Group Ex. D, PSC Employee Raise Form, at IDHR-320. Mr. Taylor received a pay raise from $10.01 to $10.75 on December 30, 2016 while posted at Old Orchard Mall. Pl. Group Ex. D, Employee Raise Form, at IDHR-318. Although the pay increase at Old Orchard Mall indicates a raise from $10.01, it was actually $10.10. Pl. Group Ex. D, Taylor's November 2016 Earnings Statement, at IDHR-319.

62. The reason for the first two pay increases are not stated on either of the Employee Raise forms. *Id.*; Pl. Group Ex. D, PSC Employee Raise Form, at IDHR-321.

63. PSC pay increases are almost always merit based. Pl. Group Ex. D, PSC Employee Handbook, at IDHR-517. The reason indicated on the Old Orchard Mall pay increase was that all security officers should be paid at this amount. Pl. Group Ex. D, Employee Raise

Form, at IDHR-318.

64. PSC reduced Mr. Taylor's hourly wage by 6% when it transferred Mr. Taylor from Hawthorn

Mall to Old Orchard Mall.  Pl. Group Ex. D, Post Transfer From [sic], at IDHR-288.  PSC

did not inform Mr. Taylor of this pay reduction.  Pl.  Ex. A, Taylor's Affidavit, at 2, ¶ 13.  At

some point between his transfer and November 5, 2016, PSC issued Mr. Taylor a pay raise

such that his wage was restored to his pre-transfer hourly wage of $10.10.  Pl. Group Ex. D,

Taylor's November 2016 Earnings Statement, at IDHR-319.

**Discrimination Against Taylor**

65. First shift supervisor Gabe and Mr. Taylor typically worked together Mondays through

Wednesdays from when Mr. Taylor's shift began, 10:00 a.m. until Gabe's shift ended, 4:00

p.m.  Def. Ex. 6, Richard Taylor's Deposition, at 77:7-16.  On these days, Mr. Taylor would

have another supervisor from 4:00 p.m. until the end of Mr. Taylor's shift at 6:00 p.m.  *Id.* at

69:20-22, 70:5-10.  While Gabe did not work Saturdays or Sundays, Mr. Taylor did work on

these days.  Pl. Ex. A, Taylor's Affidavit, at 4, ¶¶ 28-29.  Gabe left PSC sometime in January

or February 2018.  *Id*.

66. In November or December 2017, Taylor noticed that when Gabe was not his shift supervisor,

he was only assigned walk patrol.  *Id.* at ¶ 29.  This was a change from what he experienced

since working for PSC.  *Id*.  He also noticed that the younger security officers were assigned

duties other than only walking patrol.  *Id.* at ¶ 30.  Mr. Taylor reported this to Mishra. *Id.* at ¶

31.

67. Upon seeing no improvement, Mr. Taylor reported to Sharon McNamara of Human

Resources that the younger security officers were being treated better than he.  *Id*. Mr. Taylor

contacted Ms. McNamara multiple times. *Id*. He also reported to her his belief of drug use by PSC employees. *Id*.

68. In January 2018, Mr. Taylor met with Regional Manager Acevedo at the Old Orchard Mall security office. *Id*. at ¶ 33. Mishra was at the security office, but not in the meeting with Mr. Acevedo. *Id*. Mr. Taylor informed the regional manager of how the younger security officers were being treated more favorably than he and how he believed that some officers were using drugs at work. *Id*.

69. Mr. Taylor did not feel that he was taken seriously about his concerns of age discrimination. *Id*. From the meeting with Mr. Acevedo until his suspension, Mr. Taylor continued to be assigned only walking patrol when Gabe was not his supervisor and, after Gabe left PSC, this was the only assignment given to him. *Id*. at 5, ¶¶ 35-36. Taylor continued to inform Ms. McNamara of Human Resources that he was being treated less favorably than the younger security officers. *Id*. at ¶ 36.

70. On March 17, 2018 Mishra reported that he "knew Richard's agenda," and would "actively challenge" Mr. Taylor "every time it's needed." Pl. Group Ex. D, email dated March 17, 2018, IDHR 215. That same day PSC issued a Notice for Improvement, First Verbal, for personal conduct. Id. at IDHR-617. Mr. Taylor asserts he was trying to be helpful. Pl. Ex. A, Taylor Affidavit, at 5, ¶ 37.

71. On March 26, 2018, the assistant director issued a Notice of Improvement, "second written" for insubordination. Def. Group Ex. 7, at PSC 400. Mr. Taylor became upset when the assistant director insisted that he use another security officer's ID for doing his patrol. Pl. Ex. A, Taylor Affidavit, at 6, ¶¶ 4 2-43.

72. Neither of these two Notices for Improvement were marked "Final" or "Suspension" and both state that there will be a review in 90 days. Def. Group Ex. 7, PSC 400-01. There is no indication on these Notice for Improvements that Mr. Taylor risked suspension or termination. *Id*.

**Comparators**

73. PSC uses at its Chicago region's Hawthorn Mall, Old Orchard Mall, and Louis-Joliet Mall a CASE Mobile system for officers to use during their patrols. Pl. Group Ex. D, Notice for Improvements regarding CASE Mobile scans, at IDHR-222, IDHR-199, IDHR-217.

74. PSC exercises a uniform disciplinary process across its Chicago region's shopping centers. Pl. Group Ex. D, at IDHR-277, IDHR-618, IDHR-203.

75. Jovanni Ortiz worked for PSC as a security officer at Old Orchard Mall at the same time as Mr. Taylor. Pl. Group Ex. D, Ortiz I-9 Form. Ortiz was born in 1996. Pl. Group Ex. D (I-9 Form). PSC issued Ortiz one verbal Notice of Improvement for four infractions spanning a three-week period: missing work three times and arriving tardy once. Pl. Group Ex. D, Ortiz NOI, at IDHR-185. Ortiz's employment is unknown. *Id*. at IDHR-149.

76. Sarah Lindmark worked for PSC as a security officer at Louis-Joliet Mall at the same time as Mr. Taylor. Pl. Group Ex. D, Lindmark I-9 Form, at IDHR-195. Lindmark was born in 1995. Pl. Group Ex. D, I-9 Form, at IDHR-194.

77. PSC issued Lindmark seven Notices of Improvement from January 17, 2016 through July 12, 2016 which involved insubordination, improper use of company equipment, and attendance infractions. Pl. Group Ex. D, Lindmark NOIs, at IDHR-184, 186-91.

78. Lindmark's last two Notices of Improvement are check-marked "Final and Suspension" and

"Final," whereas the others are marked "Verbal" and "Written." *Id*. The NOIs provide written notice that further infractions could result in further discipline including termination. *Id*. Lindmark was suspended for 3 days. *Id.* at IDHR-193.

79. Kevin Stika worked for PSC as a security officer at Louis-Joliet Mall at the same time as Mr. Taylor worked at Old Orchard Mall. Pl. Group Ex. D, Stika email, at IDHR-156. Stika was born in 1995. *Id*.

80. PSC issued Stika six Notices of Improvement from May 21, 2016 through September 24, 2016, which involved various types of general performance infractions including, but not limited to, not using the CASE Mobile scan system, improper uniform, improper break times, not following proper call-off procedure. Pl. Group Ex. D, Stika NOIs, IDHR-198-203.

81. Four of Stika's Notices of Improvement are marked "Final" and the one prior to his suspension is marked "Suspension." *Id*. The NOIs provide written notice that further infractions could result in further discipline including termination. *Id*. Stika was suspended for 5 days. *Id.* at IDHR-204.

**Regional Manager Hector Acevedo As Decision Maker**

82. PSC's Chicago Region includes Hawthorn Mall, Old Orchard Mall, and Louis Joliet Mall among others. Pl. Group Ex. D, Standard Contractors Agreement "Exhibit B List of Shopping Centers," at IDHR 389-90. Hector Acevedo was the regional manager for PSC during the time of Mr. Taylor's employment with PSC. Pl. Ex. A, Taylor's Affidavit, at 3, ¶¶ 31-32.

83. Mr. Acevedo was involved in the decision making processes of the malls within his region. Pl. Group Ex. D, December 24, 2015 email, at IDHR-276, last ¶; Pl. Group Ex. D, Mishra to

Acevedo emails, at IDHR-219.  Mishra wanted to suspend Mr. Taylor and he asked Mr.

Acevedo to advise him as to this. *Id.*, November 13, 2016 email, last ¶.  Another time Mishra

asked Mr. Acevedo to advise him about demoting supervisor Gabe.  *Id*. Group Ex. D, July 1,

2016 email, at IDHR-220.  Employee discipline may include written or verbal warnings,

probation, suspension, reassignment, demotion, and/or termination.  *Id.*, PSC Employee

Handbook, at IDHR-520.

84. The PSC Employee Handbook is not mall specific but used across the malls in PSC's

Chicago Region.  *Id*. email dated August 23, 2016, at IDHR-220.

85. Mishra did not hire any security officers in Mr. Taylor's protected class.  Pl. Ex. A, Taylor

Affidavit, at 8,  ¶ 17.  Mishra replaced Mr. Taylor's position with a 19 year old with no

security experience.  Pl. Group Ex. D, PSC's Answer to Illinois Department of Human Rights

Questionnaire, at IDHR-123, Qu. A6;  Pl. Group Ex. D, PSC Employment Application of

Juan Cruz-Manzanares, at IDHR-624-29, Pl. Ex. A, Taylor Affidavit, at 7, ¶ 50.  The

replacement applied to work at PSC within one week of Mr. Taylor's suspension.  *Id.* at

IDHR-624.

86. The PSC Employee Handbook includes PSC's  EEO policy.  Pl. Group Ex. D, Employee

Handbook, at IDHR-519.  The handbook also provides for a 90-day probationary period for

new employees.. *Id*. at IDHR-516.  Taylor's probation period ended on August 27, 2015

with him not being dismissed or the probation period extended.

87. The PSC Employee Handbook details periodic employee performance reviews that PSC may

perform and document.  *Id*. at 517. Mr. Taylor never received an employee performance

review as described in the handbook.  Pl. Ex. A, Taylor Affidavit, at 6, ¶ 45.

88. The handbook is silent as to requiring employees to sign memos or Notices of Improvement. *See generally* Pl. Ex. D, Employee Handbook, at IDHR-510-38.

89. Mall management is not a supervisor or foreman as to PSC and PSC's employees, thus ensuring PSC's independent decisions over its employees.  Pl. Group Ex. D, Standard Contractors Agreement, at IDHR 364, § 13.

90. Mr. Taylor had been employed by other security companies since his termination from PSC. Def. Ex. 6, Richard Taylor's Deposition, at 15-22:1-11.  Mr. Taylor began working for his current employer in November 2020.  *Id*. at 22:2-11.


Respectfully submitted,

AMAL LAW GROUP, LLC

BY:     */s/ Janaan Hashim*
           Janaan Hashim
           One of Plaintiff's Attorneys

           AMAL LAW GROUP, LLC
           Janaan Hashim
           161 N. Clark St., Ste. 1600
           Chicago, IL 60601
           Ph: 312-882-4122
           ARDC #6288221

CERTIFICATE OF SERVICE

I, Janaan Hashim, an attorney, hereby certify that I have caused to be served a true and correct copy of the accompanying **PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF FACTS** upon the following party by electronically filing these documents with the Court's CM/ECF system, on this <u>1st day of September, 2021</u>.

*/s/ Janaan Hashim*
Janaan Hashim

Service List:

THOMAS W. CUSHING
Donohue Brown Mathewson & Smyth LLC
Thomas W Cushing
South Dearborn Street, Suite 800
Chicago, IL 60603
(312) 422-0900
service@dbmslaw.com
<u>cushing@dbmslaw.com</u>

| | |
|---|---|
| Bradley Edward Puklin | Mason William Kienzle |
| Swanson, Martin & Bell, LLP | Donohue Brown Mathewson & Smyth LLC |
| 330 N. Wabash Avenue | 140 South Dearborn Street |
| Suite 3300 | Suite 800 |
| Chicago, IL 60611 | Chicago, IL 60603 |
| (312) 321-3543 | 3124220900 |
| Email: bpuklin@smbtrials.com | Email: kienzle@dbmslaw.com |

33