UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RICHARD TAYLOR, ) | |
| Plaintiff, ) | Case No. 19-cv-05918 |
| ) | |
| v. ) | Hon. Virginia M. Kendall |
| ) | |
| PROFESSIONAL SECURITY ) | |
| CONSULTANTS, ) | |
| Defendant. ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

NOW COMES, Plaintiff RICHARD TAYLOR ("Taylor") by and through undersigned Counsel, submits this Response in Opposition to Defendant Professional Security Consultants' ("PSC") Motion for Summary Judgment.

**I. INTRODUCTION**

With nearly 40 years of experience in the security field, PSC hired Taylor to work as a security officer. After his termination, Taylor filed a lawsuit against PSC under the ADEA with respect to his terms and conditions of employment, suspension, and termination. Defendant PSC is not entitled to summary judgment. There remain issues of material fact for a jury to decide.

**II. OBJECTIONS TO FACTS NOT SUPPORTED BY ADMISSIBLE EVIDENCE**
    **A. Objection To This Court Taking Judicial Notice Of Plaintiff's Prior Case**

Plaintiff objects to Defendant's Statement of Facts ("DSOF") Nos. 8 to 15 and to its request for judicial notice of a resolved case, 16-cv-05210 ("prior case"), a matter not before this Court. To the extent the Court finds it relevant, the case should be excluded as prejudicial under FRE 403. FRE 403 allows a court to exclude evidence if its probative value is outweighed by unfair prejudice, would confuse the issues or mislead the jury. Fed. R. Evid. 403. The risk of prejudice and confusion substantially outweighs its probative value. The matter has no bearing

on the current case and PSC did not raise it in its argument. The present lawsuit is limited to age discrimination and is based only on allegations at Old Orchard Mall ("OOM"). PSC admits the agreement from the prior case did not release the claims on which this lawsuit is based. Def. Ex. 5, at 1, ¶ 6, at 2-3, § 2. Because the Title VII case is irrelevant, the only effect of judicial notice of it is to prejudice Plaintiff.

### B. Objection To Admission Of The IDHR Report

Plaintiff objects to DSOF No. 7 as prejudicial as it sets forth legal conclusions and substantially risks prejudice and confusion of the issues to a jury. Fed. R. Evid. 403. Congress gave parties a right to *de novo* review of the merits of discrimination claims, so that "the fact-finder is a district judge rather than an administrative agency hearing officer." *Silverman v. Bd. of Educ. of The City of Chicago*, 637 F.3d 729, 732 (7th Cir. 2011).

Agency findings may be excluded if the prejudicial effect outweighs its probative value. *Tulloss v. Near North Montessori Sch., Inc.*, 776 F.2d 150, 154 (7th Cir. 1985). The report would create "an undue risk of confusion, because the jury might presume that the matter of discrimination had already been decided by another entity." *Id.* citing *Brom v. Boze U*, 867 F.Supp. 686, 692 (N.D.Ill. 1994). The report has little probative value as the jury would consider admissible evidence itself to determine whether Plaintiff's claims are meritorious. See *Id.* at 153-154. A court and jury must be the only entity making legal conclusions, and a district court "must… thereby render [such unreliable information] inadmissible under Fed.R.Evid. 403." *Young v. James Green Management, Inc.*, 327 F.3d 616, 624 (7th Cir. 2003).

### C. Objections To Admissibility Of PSC 2015 And 2016 Records

Plaintiff objects to DSOF 23 for Declarant's lack of personal knowledge as required by FRCP 56(c)(4) and FRE 602 as to PSC records in Def. Group Exhibit 7 from 2015 involving Hawthorn Mall. Rishi Mishra ("Mishra") states he worked for PSC at OOM from 2016 onwards.

2

Def. Ex. 8, at 1, ¶ 2.  Mishra admits he is not familiar with procedures at other centers as to their patrol tours, which many of these records address. Def. Gp. Ex. 7, at 405, April 22, 2017. Mishra's Declaration fails to explain how he personally knows the practices at Hawthorn in 2015.  As such, DSOF Nos. 24, 24-40 lack proper authentication and foundation.

 Plaintiff further objects to those 2015 and 2016 documents that contain hearsay and/or double hearsay without meeting an exception. "Hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial[.]." *Eisenstadt v. Centel Corp.*, 113 F. 3d 738, 742 (7th Cir. 1997)).  As to the 2015 emails, FRE 803(6)(A)-(C) provides requirements for a business record to satisfy in order to meet the exception.  These requirements must be met by someone who satisfies 803(6)(D).  Because Mishra did not work for PSC at Hawthorn Mall, was not employed by PSC in 2015, and his Declaration does not explain the record keeping process or that Mishra is the custodian of those records, he cannot satisfy 803(6)(D) as being a custodian or qualified witness to verify the 803(6)(A)-(C) requirements. Additionally, the declaration does not state that once Mishra started working for PSC in 2016 that he was part of a forwarding chain of any of the 2015 emails.  The declaration fails to provide the necessary foundation, authentication, and exception to the hearsay rule.  Thus, the 2015 records noted in DSOF Nos. 24-30, 33-40 are inadmissible.

 Plaintiff objects to the 2016 emails in DSOF that contain hearsay or double hearsay. DSOF Nos. 45, 47, 52, and 53 all include inadmissible double hearsay under FRE 805 for which no exception applies.  In its statement of facts in its argument, PSC presents statements for the truth of the matter asserted for DSOF Nos. 24-25, 42-55. Complaints can be used to show an employer's state of mind, but not to show the employee engaged in the conduct alleged. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 574-75 (7th Cir. 2021).  Because PSC

does not present these documents to show its state of mind, but rather for the truth of the matters asserted, the court should exclude these statements per *Khungar*.

### III. PLAINTIFF'S STATEMENT OF FACTS

On May 31, 2015, Taylor was 59 when hired by PSC to work at its Hawthorn Mall site within PSC's Chicago Region.[1] DSOF No.16. Pl. Stmt Add'l Facts ("PSOAF") No. 82. Taylor worked there until his transfer to OOM. DSOF No. 18. Mishra was not involved in Taylor's hiring process in the decision to transfer him. Pl. Ex. A, at 2, ¶ 12.

At Hawthorn, PSC trained Taylor to run dispatch and monitor the computers. Def. Ex. 6, 65-66:18-2. He was assigned these duties along with walking and vehicle patrol. *Id*. The patrols involved two-way radio check-in and CASE mobile scans. Pl. Ex. A, at 6, ¶ 43. By August 27, 2015, Taylor satisfied his 90-day probation period, meaning PSC evaluated his suitability for employment, including his habits, attitude, attendance, and performance and found they "measure up" to PSC's standards. Pl. Gp. Ex. D, at IDHR 516. By October 10, 2015, Taylor received two pay raises at Hawthorn. PSOAF No. 61. While the Pay Increase form does not provide a reason for Taylor's raise, the employee handbook states that PSC provides pay raises "almost always based on merit." Pl. Gp. Ex. D, at IDHR 517.

In December, Taylor experienced two incidents during his shifts at Hawthorn. The first one was stated on a Notice for Improvement ("NOI") as "Disregard of Officer Safety Procedures." DSOF No. 32. Within it, PSC alleges Taylor "failed to report a man with a gun." *Id*. This was false. Taylor never saw a man with a gun. *Id*. The dispatch report, supervisor Mcdonald's letter and Taylor's letter corroborate this. *Id*. The second incident involved a fire

---

[1] Pursuant to FRCP 56(c)(4) Taylor submits his Affidavit in Opposition to Defendant's Motion for Summary Judgment. Plaintiff's Group Ex. D is comprised of documents and records proffered by defendant to the IDHR investigator; Plaintiff's Ex. C provides authentication under Fed. Rules of Evidence 901(b)(7) to Plaintiff's Group Exhibit D. The IDHR file falls under the FRE 803(6) hearsay exception.

4

alarm and Taylor heard a pre-recorded announcement instructing people to leave. DSOF No. 33; Pl. Ex. A, at 2, ¶ 8. Dispatch did not answer Taylor's call to determine whether he should follow the announcement or disregard it and the alarm. *Id*. In his judgment and under the circumstances of not receiving instructions from dispatch, Taylor instructed people to leave. *Id*.

Rather than terminating Taylor, PSC saw the value in keeping him. PSC offered Taylor the choice of either remaining with PSC and relocating to OOM or to resign. DSOF No. 39. Taylor decided to stay with the company because he welcomed the "fresh start" that PSC promised in their offer. Pl. Ex. A, at 2, ¶ 9. PSC admits in their argument the transfer was to give Taylor "another chance," thus putting the issue to rest. Doc. No. 64 at 9.

PSC transferred Taylor on December 23, 2015, and for the next two years, PSC assigned multiple job duties similar to those at Hawthorn. Def. Ex. 6, 71-72:22-4. His performance at OOM was no different than it was during his probationary period. OOM, however, never assigned Taylor to run dispatch although he was trained to do this. *Id* at 66:6-17. As the oldest security officer there, Taylor knew the other officers called him "the old guy." Pl. Ex. A at 2, ¶ 16.

In November or December 2017, Taylor noticed a change in the regular practice of duty assignments. Pl. Ex. A, at 4, ¶ 29. His shift overlapped with supervisor Gabe from Mondays to Wednesdays. Def. Ex. 6, 77-7-16. Taylor noticed that after Gabe's shift ended, and on weekends when Gabe did not work, he would only be assigned foot patrol. PSOAF No. 66. He also noticed that on weekends, younger security officers were given job duties other than foot patrol. *Id*.

Taylor reported this to Mishra, no reason was given for the treatment, and the pattern continued. Pl. Ex. A, at 4, ¶ 31. Taylor contacted HR several times as well. *Id*. After no

5

improvement and only after Taylor reported drug use by other officers, HR sent Regional Director Hector Acevedo ("Acevedo") to OOM in January 2018. PSOAF No. 68. Taylor and Acevedo met in Mishra's office and Taylor informed Acevedo of his concerns. PSOAF No. 68.

After the meeting, Taylor and other officers were asked to do a drug test. PSC asserts Taylor refused, but he did not. DSOF No. 50. In an email from Mishra to Acevedo, the subject line is "Richard Taylor - Refused to Take Drug Test" and within it Mishra describes the same. *Id*. However, Mishra admitted Taylor offered to take the test the next day. *Id*. Taylor wanted to take the test the next day so he could have a person whom he trusted to observe as a witness. *Id*.

Taylor's working condition did not deviate in November or December 2017. PSOAF No. 67. In the nine days before his suspension, the following occurred:

- **March 17, 2018**: Mishra informed Taylor that his co-workers were complaining about him. Mishra instructed Taylor not to talk to them about non-work matters. Pl. Ex. A, at 5, ¶ 38. Taylor felt harassed and he told Mishra he would call HR. *Id*. Mishra told Regional Director Acevedo he "knew Richard's agenda" and from that point forward he would "actively challenge [him]." PSOAF No. 70. PSC then issued Taylor a "First Verbal" NOI for personal conduct. *Id*. This was the first NOI Taylor had received in a year. DSOF No. 47.

- **March 23, 2018:** Mishra reports to Acevedo that Taylor refused to sign two NOIs. DSOF No. 52. Like the drug email, this too was false. Taylor stated he was not refusing, but would sign them the next day because he did not have time on his shift to read them before signing. *Id*.

- **March 26, 2018:** Assistant director Brandon Ng ("Ng") reported Taylor did not sign an NOI and left after being told to use the CASE mobile scan during his rounds, but then returned 10 minutes later to comply. DSOF No. 53. It is not mentioned that Taylor did not use the system because PSC lost, and had not replaced his ID, which is used to record officers' patrol routes.

6

Pl. Ex. A, at 6, ¶ 43. When Taylor explained this, Ng told him to use someone else's ID, which Taylor first opposed as it would record his patrol as someone else's and was against company policy, but he returned as he thought his job might be jeopardized if he didn't. *Id*.

- **March 26, 2018:** PSC issued Taylor a "Second Written" NOI for insubordination relating to the incident with Ng. This was Taylor's last day of work. DSOF No. 53.

- **March 27, 2018:** The OOM general manager ("GM") emailed Mishra requesting Taylor's removal. He provided no reason. The email says that this request was made several months earlier, although there is no evidence of this. DSOF No. 54.

- **March 29, 2018:** Mishra told Taylor he is suspended pending an investigation. Taylor asked, and was not informed, of what the investigation was about. Pl. Ex. A, at 6, ¶ 44.

- **First week of April**: Having not heard from PSC about his work status, Taylor contacted HR who told him to wait for PSC to contact him. HR did not give him more information or ask him any questions. *Id*., Pl. Ex. A, at 7, ¶ 46-48.

- **April 19, 2018**: Mishra informed Taylor he was terminated but PSC did not provide any documentation. DSOF No. 22. Taylor was not given an explanation or opportunity to rebut. Pl. Ex. A, at 7, ¶ 49.

### A. PSC Policies and Procedures

PSC provides a uniform employee handbook for use across malls in the PSC Chicago region. PSOAF No. 84. The handbook states that PSC may complete employee performance reviews, but Taylor never received a review. Pl. Ex. A, at 6, ¶ 45. The handbook does not state employees are required to sign NOIs and memos. PSOAF No. 88. Taylor denies refusing to sign any NOIs or memos. Def. Ex. 6, at 51:8-14. Taylor denies receiving any NOIs personally or otherwise. Pl. Ex. A, at 3, ¶ 23. This is corroborated by Mishra's statement admitting he and his

supervisors wrote "refused to sign" on the NOI rather than the employee. Def. Gp. Ex. 7, at 407, November 13, 2016. This establishes Taylor was not shown nor given the NOIs.

PSC uses the same disciplinary protocol across its Chicago region malls. PSOAF No. 74. The NOIs and Status Change Forms are identical at Hawthorn Mall, OOM, and Louis-Joliet Mall ("Joliet Mall"). *Id*. The face of the NOIs have a progressive warning system of verbal, written, final, and suspension, and they request follow up after a certain number of days. *Id.* NOIs from these three malls show that these sections are consistently completed. *Id.*

PSC uses CASE Mobile scan system at its three malls, which officers use with their two-way radio as part of their patrol duty. Pl. Ex. A, at 6, ¶ 43. Although PSC seems to want its officers to use both tools during patrols, even Mishra did not know whether this was OOM's protocol. DSOF No. 48. The ID cards remain at OOM and Taylor followed this policy. Pl. Ex. A, at 6, ¶ 41. Shortly before his suspension, PSC lost Taylor's ID, and so Taylor could only use the two-way radio. *Id*. Although Taylor asked for a new ID, he was not given a replacement before being suspended. *Id*. This led to the March 26, 2018 incident described *supra*.

### B. Similarly Situated Employees

Jovanni and Mohmed worked at OOM at the same time as Taylor. PSOAF No. 75. Both were PSC security officers and had the same duties as Taylor. Pl. Ex. A, at 2, ¶ 10. Mishra was a decision maker; Jovanni and Mohmed are not in the protected class. PSOAF No. 75; Pl. Ex. A, at 6, ¶ 40. In a three-week period, Jovanni was reprimanded for missing work for three days and arriving tardy on one day. PSOAF No. 75. Jovanni was issued one Verbal NOI for these four infractions. *Id*. Jovanni's employment with PSC ended at some unknown point. *Id*. Mohmed was issued an NOI and did not sign it; he was not reprimanded. Pl. Ex. A, at 6, ¶ 40.

Hector Acevedo ("Acevedo") is the Chicago Regional Manager to whom the malls' security directors report. PSOAF No. 82; Pl. Ex. A, at 3, ¶¶ 31-32. Directors report disciplinary

8

matters to him and he was a decision maker in transfers, demotions, and suspensions. PSOAF No. 83. PSC applies a uniform disciplinary process across its Chicago region malls. PSOAF No. 74.

Sarah and Kevin worked for PSC as security officers at Louis-Joliet Mall and are outside the protected class. PSOAF Nos. 76, 79. Security officer's job duties are the same at various PSC Chicago area malls. Pl. Ex. A, at 2, ¶ 10. PSC issued Sarah seven NOIs over six months and Kevin six NOIs over five months in 2016 for infractions similar to Taylor, including insubordination and refusing to sign NOIs. PSOAF Nos. 77, 80. The NOIs issued to both comparators used the full discipline forewarnings before suspending either comparator: and provided written notice of the potential for suspension. PSOAF No. 81. PSI suspended Sarah for three days and Kevin for five; neither were terminated. Mishra did not hire any security officers in Taylor's protected class. Pl. Ex. A, at 2, ¶ 17. Mishra replaced Taylor with a younger, less experienced employee who applied within a week of Taylor's suspension. PSOAF No. 85.

**ARGUMENT**

### IV. <u>LEGAL STANDARD OF PROOF</u>

Summary judgment is not appropriate unless the moving party can establish "there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets this burden, the non-moving party may produce evidence demonstrating there is a dispute of material fact to be resolved by the jury. *Id*. The court must construe the evidence - and grant all reasonable inferences - in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

In its argument, PSC improperly constricts the facts that it wants this court to use in its summary judgment standard in citing *Bordelon v. Chicago School Reform Board of Trustees*. *Bordelon* allows the court to limit its facts to the Local Rule 56.1 statements if warranted, but is not required to do so, "...the district court is *entitled to* limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements." *Id.* (emphasis added). Indeed, courts are not so limited and "at the summary judgment stage the court must consider all admissible evidence to decide whether a reasonable jury could find," in the non-movant's favor. *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 720 (7th Cir. 2018).

V. <u>**GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT**</u>

The ADEA prohibits employers from discriminating against employees in the terms, conditions, or privileges of employment because of age. 29 U.S.C. § 623(a)(1). A plaintiff may establish ADEA discrimination through *Ortiz's* totality of the evidence approach or under the *McDonnell Douglas* formula - a burden that is "not onerous." *Lewis v. City of Chicago*, 496 F.3d 645, 650 (7th Cir. 2007). Because Taylor can show that PSC discriminated against him, Defendant's motion must be denied.

### A. Totality of the Evidence Approach Under *Ortiz*

The Court in *Ortiz* instructed district judges and litigants to avoid characterizing evidence as "direct" or "indirect" and instead focus on whether the evidence permits a reasonable fact-finder to conclude that discrimination caused the adverse action. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016). As such, courts should "consider evidence as a whole." *Id.*; see also *Tyburski v. City of Chi.*, 964 F.3d 590, 598 (7th Cir. 2020).

A plaintiff can prove discrimination through various types of circumstantial evidence. *Vega v. Chi. Park Dist.*, 954 F.3d 996, 1004 (7th Cir. 2020). "Significant, unexplained or systematic deviations from established policies or practices can be probative of discriminatory

intent." *Id*. Since Taylor's hiring in 2015 he and his colleagues were assigned multiple job duties during their shifts. In November or December 2017, however, PSC stopped this practice with Taylor, but not with his younger colleagues, subjecting Taylor to disadvantageous terms and conditions. When Gabe was not his shift supervisor, Taylor was assigned only walking patrol. After Gabe left PSC in early 2018, Taylor was never assigned any duty other than walking patrol, while his younger co-workers did not experience this. This continued until Taylor's suspension. Taylor informed Mishra, HR, and Acevedo of this discrepancy. With no explanation offered by PSC, Taylor saw no improvement to this disparate treatment.

"Flagrant inaccuracies and inconsistencies in the employer's supposed reason for firing the plaintiff can be evidence of pretext." *Id*. at 1005 (citation omitted). The records PSC relies on to show poor job performance are riddled with enough flagrant inaccuracies and dishonesty to show pretext. As to job performance evaluations, "The question is not whether the ratings were right but whether the employer's description of its reasons [regarding the ratings] is honest." *Igasaki v. Ill. Dept. of Fin. & Prof'l Regulation*, 988 F.3d 948, 957-58 (7th Cir. 2021).

The overwhelming majority of complaints against Taylor are noted in emails that did not result in PSC issuing Taylor an NOI. Taylor refutes these allegations and the NOIs issued in the Response to Defendant's Statement of Facts as false and pretext for PSC's unlawful discrimination. Several complaints, however, provide a sampling of PSC's dishonesty.

PSC asserts Taylor refused to take a drug test when asked; it issued no NOI. The subject line of Mishra's email to Acevdeo regarding this incident states as much and the email asserts as much. However, the email also quotes Taylor as saying, *"I'm not refusing to take the drug test*, I'll do it tomorrow, not today." (emphasis added). Taylor's deposition and affidavit corroborate this. PSC asserts Taylor refused to sign two memos; it issued no NOI. Mishra's email relaying

this incident tries to implicate Taylor, but it also says that he wasn't refusing and that he was willing to sign the memos the next day. Taylor's testimony confirms this adding he did not have enough time to read the two memos in the minutes remaining on his shift. PSC relies on this as a reason for poor job performance. Taylor testified that he did not refuse, was never given an NOI, and Mishra notes in an email that he and his staff - not the employee - write, "refused to sign." Moreover, even if this was true, which it is not, PSC's reliance on this runs afoul of its own policy which does not require its employees to sign memos or NOIs.

PSC also asserts OOM's GM requested to remove Taylor based on poor job performance, but that, too, is inaccurate. The GM provided no reason for his request. The GM claimed he requested this months prior, and yet, there is no record supporting this. It should be noted the email was sent the day after Taylor's last day of work, and one week after Mishra told Acevedo he "knew Richard's agenda" and would "actively challenge" him after Taylor said he felt that he was being harassed and would go to HR. Such inaccuracies also include Hawthorn Mall. The most egregious is PSC falsely accusing Taylor in an NOI of not reporting a person with a gun in at the mall even though the dispatch report does not state this and Supervisor Macdonald and Taylor provided letters corroborating the dispatch report. PSC's reliance on documents that are replete with dishonest allegations upon which to base its decision to terminate Taylor shows pretext. *See* DSOF Nos. 25, 31, 42, 45, 47, 51, 53.

The employer's "lack of interest" in the employee's "side of the story" during an investigation is "similarly significant" in proving pretext. *Vega*, 954 F.3d at 1004. It is undisputed that PSC suspended Taylor pending an investigation. Taylor testifies that no one contacted him to get his side of the story as to any of the allegations. If this had happened, Taylor would have explained himself and reminded PSC of his compliance as described above.

By not interviewing Taylor, PSC failed to show interest in getting his view, thus showing pretext.

In evaluating job performance, the court focuses on whether the employee was "performing well at the time of [her] termination." *Peele v Country Mut. Ins, Co*., 288 F.3d 319, 329 (7th Cir. 2002). Before March 2018, the last NOI issued to Taylor was a year prior. On March 17, Mishra communicated to Acevedo that he "knew Taylor's agenda" and would "actively challenge" Taylor. This same email notes that Taylor told Mishra that he felt harassed and was going to talk to HR. That day, PSC issued a verbal NOI to Taylor for personal conduct when Taylor was trying to be helpful. On March 23, Mishra falsely asserted that Taylor refused to sign two memos as described above. On March 26, Taylor was issued a written NOI for insubordination relating to the incident in which Taylor did not want to use someone else's ID to do the CASE mobile scans. This was Taylor's last day of work, and the next day the GM sent an email asking for Taylor's dismissal. On March 29, Mishra called Taylor and told him he was suspended pending an investigation. On April 9, Mishra replaced Taylor with a 19 year old. On April 19, Mishra informed Taylor he was terminated. This evidence could support a reasonable jury in declining to believe that PSC honestly thought Taylor performed poorly.

A plaintiff may also use similarly situated comparators in proving discriminatory intent. *Vega,* 954 F.3d at 1004. The "similarly situated" analysis requires "a 'flexible, common-sense' examination of all relevant factors." *Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (citation omitted). Similarly situated employees need not be identical in every conceivable way, nor clones of the plaintiff and they do need to share the same decision maker. *Id*. at 846-847. Here, Jovanni and Mohmed are similarly situated employees to Taylor. Like Taylor, PSC reprimanded Jovanni for poor attendance. Jovanni's four infractions spanned three weeks,

13

allowing Jovanni to improve during this time. Taylor was treated less favorably: across only nine days PSC issued two NOIs for one infraction each. Taylor was suspended and given no chance to improve, Jovanni's employment after his NOIs is uncertain. Comparator Mohmed was issued an NOI, refused to sign it and not reprimanded. With Taylor, PSC is using this as a basis to show poor job performance. "Minor distinctions" between similarly situated employees would not "prevent a reasonable jury from concluding that these employees were similarly situated," to the plaintiff. *Vega*, 954 F.3d at 1006. Here, the distinctions between how Jovanni and Mohmed were treated as compared to Taylor shows pretext.

As explained *supra,* Sarah Lindmark and Kevin Stika are similarly situated to Taylor. PSC issued Lindmark seven NOIs over six months and Stika six NOIs over five months for infractions similar to Taylor. Their NOIs followed the progressive warning on the NOIs from verbal to suspension. Taylor's did not. It was written on their NOIs that future recurrences could result in suspension or termination. Taylor's did not. They were given months to improve. Taylor was not. They remained employed at PSC. Taylor was terminated. In essence, Taylor was expected to be perfect while the comparators were not.

Similarly situated analysis can be satisfied by presenting evidence that one person not in the protected class was treated more favorably. See *Curry v. Menard, Inc*., 270 F.3d 473, 478 (7th Cir. 2001) (Female employee alleging sex discrimination satisfied "similarly situated" element of prima facie test by presenting evidence that one male employee was treated more favorably by the employer). In viewing the evidence in Taylor's favor, and drawing all reasonable inferences in his favor, issues of material fact remain as to whether Taylor was meeting PSC's expectations.

### B. *McDonnell-Douglas* Approach

To make a prima facie case under *McDonnell Douglas,* a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer. *Igasaki*, 988 F.3d 957. Prongs one and three are undisputed. The *Peele* court held that the second and fourth prongs merge "[w]hen a plaintiff produces evidence sufficient to raise an inference that an employer applied its legitimate employment expectations in a disparate manner," thus "allowing the plaintiff to establish a prima facie case...and proceed to the pretext inquiry for the court." *Peele*, 288 F.3d at 329-330.

Plaintiff argues *supra* that PSC applied its legitimate employment expectations in a disparate manner by providing similarly situated employees who were treated more favorably than Taylor. Under *Peele*, Taylor establishes his prima facie case allowing him to show that the reason proffered by PSC for terminating him was phony. The *Burkard* court considered the Plaintiff's allegations of discrimination in the analysis of pretext. *Burkard v. Finner N Finner, LLC*, 187 F.Supp.3d 991, 1001 (S.D. Ind. 2016). Here, in using *Peele*, the burden on Taylor is to show pretext which is provided *supra*. Under the *McDonnell Douglas* approach, Taylor shows that a genuine issue of material fact remains as to whether Taylor met PSC's expectations.

## CONCLUSION

Taylor sets forth competent and sufficient evidence to support his claim of discrimination. By the well-established summary judgment standard requiring all of the evidence to be viewed in the light most favorable to Taylor, and all inferences to be resolved in his favor, there is a genuine issue of material fact that prevents summary judgment. For these reasons, Defendant's motion should be denied.

WHEREFORE, Plaintiff Richard Taylor respectfully requests that this Court deny Defendant's request for summary judgment.

        Respectfully submitted,

        AMAL LAW GROUP, LLC

BY:   */s/ Janaan Hashim*
        Janaan Hashim
        One of Plaintiff's Attorneys

        AMAL LAW GROUP, LLC
        Janaan Hashim
        161 N. Clark St., Ste. 1600
        Chicago, IL 60601
        312-882-4122

**Certificate of Service**

The undersigned, an attorney, hereby certifies that on September 1, 2021, a copy of the foregoing was served by the Court's electronic filing system, upon the party of record.

BY: */s/ Janaan Hashim*

Janaan Hashim
One of Plaintiff's Attorneys

AMAL LAW GROUP, LLC
Janaan Hashim
161 N. Clark St., Ste. 1600
Chicago, IL 60601
312-882-4122